# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:11CV006-RLV-DSC

| | |
|---|---|
| PATRICIA G. PLUMMER,<br>      Plaintiff, | )<br>)<br>) |
| vs. | ) **MEMORANDUM AND RECOMMENDATION**<br>) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>      Defendant. | )<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #13) and "Memorandum in Support ..." (document #14), both filed June 24, 2011, and Defendant's "Motion for Summary Judgment" (document #18) and "Memorandum in Support..." (document #19), both filed September 22, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for a period of disability and disability insurance benefits ("DIB") on March 27, 2007, alleging that she became disabled on November 1, 2006. Plaintiff's application was denied initially and on reconsideration, and a hearing was held on January 22, 2010 (Tr. 26-47).

On March 12, 2010, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.11-21). In his decision, the ALJ found that Plaintiff last met the insured status requirements on December 31, 2008 and had not engaged in substantial gainful activity from her alleged onset date through her date last insured. (Tr. 16, 28-29).[1] The ALJ also found that Plaintiff suffered cervical and lumbar degenerate disc disease and osteoporosis of the lumbar spine, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 16-17). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform the full range of "light" work, as defined in 20 C.F.R. § 404.1567(b) (Tr. 17).[3] The ALJ also found that Plaintiff could not perform her past relevant work. The ALJ then determined that in light of Plaintiff's RFC, age, education, and work experience, a finding of "not disabled" was directed by Medical-Vocational Rule 202.17 (Tr. 20). *See* 20 C.F.R. Pt. 404, subpt. P, App. 2. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act during the relevant time period (Tr. 21).

By notice dated December 22, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on January 17, 2010. Plaintiff assigns error generally to

---

[1] Plaintiff acquired sufficient quarters of coverage to remain insured for DIB only through December 31, 2008. To establish disability for DIB purposes, she had the burden of showing that she was disabled on or before that date. See 20 C.F.R. §§ 404.101, 404.130-404.131.

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

2

the ALJ's evaluation of her impairments, RFC and subjective complaints. "Memorandum in Support ..." at 5 (document #14). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the

3

Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior to her date last insured of December 31, 2008.[4] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

Plaintiff first assigns error to the ALJ's conclusion that her impairments or combination of impairments did not meet the requirements of Listing 1.04A, Disorders of the spine (Tr. 17).[5]

---

[4]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
    inability to engage in any substantial gainful activity by reason of any medically determinable
    physical or mental impairment which can be expected to result in death or which has lasted or can
    be expected to last for a continuous period of not less than 12 months . . . .
    Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[5] Listing 1.04A provides, in relevant part:
Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

4

A claimant bears the burden of establishing that her impairment meets or equals a listed impairment. S.R. ex rel. R.R. v. Barnhart, 371 F. Supp. 2d 796, 799 (W.D. Va. 2005); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). To meet a listing, an impairment must satisfy all of the listing's criteria and also fulfill the durational requirement, such that it has lasted or can be expected to last, at listing-level severity, for a continuous period of at least 12 months. 20 C.F.R. § 404.1525(c)(3) (citing 20 C.F.R. § 404.1509); see also 42 U.S.C. § 423(d)(1)(A); Sullivan v. Zebley, 493 U.S. 521, 530 (1990); cf. Barnhart v. Walton, 535 U.S. 212, 218-19 (2002). The determination of whether a claimant meets or equals a listing is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2).

Here, the ALJ reasonably found that Plaintiff's back impairment did not meet or equal Listing 1.04A. In making this finding, the ALJ relied on the opinions of two State agency physicians, who reviewed the relevant medical evidence of record and concluded that Plaintiff's impairments did not meet or equal any of the listings (Tr. 19, 48-49). Specifically, these physicians completed Disability Determination and Transmittal forms indicating that Plaintiff was not disabled, which "conclusively establish[es] that consideration by a physician. . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004) (holding that completion of such forms by State agency physicians constituted substantial evidence in support of the ALJ's finding that the claimant did not meet or equal a listing); accord English v. Astrue, No. 3:08-2887-MBS-JRM, 2010 WL 1258025, at *4 (D.S.C. Feb. 23, 2010); Social Security Ruling ("SSR") 96-9p, 1996 WL 374180, at *3 (explaining that the signature of a State agency medical consultant on a Disability Determination Transmittal form ensures that consideration was give to whether a listing is met or equaled). Moreover, the fact that the State

agency physicians proceeded through the sequential evaluation process to complete physical RFC assessments evidences their step three determination that Plaintiff's impairments did not meet any of the listings (Tr. 206-13, 255). See 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity.").

In making their findings, the State agency physicians reviewed and discussed virtually all of the relevant medical evidence upon which Plaintiff relies for her listings argument (Tr. 213, 255; Document #14 at 7-8). The State agency physicians addressed, inter alia: (1) the October 23, 2006 examination at Dr. Hubbard's office; (2) the October 30, 2006 lumbar spine MRI; and (3) the March 22, 2007 cervical spine MRI and X-ray (Tr. 213, 255; Pl. Mem. 7-8).[6] Plaintiff's lay opinion that the findings in these records conclusively establish that she meets Listing 1.04A, cannot overcome the informed assessments of two State agency physicians, who are experts in Social Security disability programs. See Arnold v. Barnhart, 473 F.3d 816, 822 (7th Cir. 2007) (holding that lay witnesses, "none of whom were health care professionals, were not competent to refute the professional medical expert testimony."); SSR 96-6p, 1996 WL 374180, at *2 ("Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules. . . [require an ALJ] to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of non-examining physicians. . ."). While Plaintiff also relies on Dr. Campos' June 2009 treatment notes and a July 2009 lumbar MRI (Pl. Mem. 7-8), such evidence originated months after Plaintiff's date

---

[6] Also among the evidence apparently considered by at least one of the State agency physicians (Tr. 55), and cited by the ALJ in his decision (Tr. 19), was the May 8, 2007 lumbar MRI report, which stated that the herniated disc at L4-5 was "considerably smaller when compared with the prior study of 10/30/06." (Tr. 191). The May 2007 MRI contains no finding of nerve root compression, as would be required to establish the full criteria and durational requirements of Listing 1.04A. See, e.g., Zebley, 493 U.S. at 530; 20 C.F.R. § 404.1525(c)(3); Pt. 404, Subpt. P, App. 1, § 1.04A.

last insured, and is not probative of her condition during the relevant time period. See, e.g., 42 U.S.C. § 423(c);. Johnson v. Barnhart, 434 F.3d 650, 655-56 (4th Cir. 2005); 20 C.F.R. §§ 404.101, 404.130, 404.131.

Plaintiff next argues that the ALJ's credibility assessment of her subjective complaints is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's cervical and lumbar degenerate disc disease and osteoporosis of the lumbar spine – which could be expected to produce some of the symptoms claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then properly determined, however, that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

7

The ALJ reasonably found that Plaintiff's allegations concerning the degree and limiting effects of her pain were not credible to the extent that they exceeded the ALJ's RFC finding (Tr. 18). In support of his credibility finding, the ALJ relied on the objective medical evidence, limited course of treatment, and Plaintiff's activities of daily living (Tr. 18-19). Specifically, the ALJ noted that treatment records from the relevant period did not show Plaintiff presenting in acute distress and that medical examinations did not reveal muscular atrophy or any significant functional limitations on a consistent basis (Tr. 18-19, 178, 244, 276, 295). Indeed, as the ALJ explained, none of Plaintiff's treating physicians placed restrictions on her activity (Tr. 19). Rather, the two State agency physicians who reviewed the medical evidence opined that Plaintiff could perform "light" exertional work (Tr. 19, 206-13, 255). As the ALJ also noted, apart from medication and limited physical therapy from April 2007 through June 2007, Plaintiff's treatment was conservative, with no evidence of surgical intervention or epidural steroid injections (Tr. 19, 233-43). The ALJ relied on Plaintiff's activities of daily living, which included driving, grocery shopping, simple meal preparation, dusting, and, from November 2006 through April 2007, working twelve to fifteen hours per week as a house cleaner (Tr. 16, 19, 32-34, 115, 124). The ALJ reasonably concluded that Plaintiff's allegations of totally disabling symptoms (e.g., that she was forced to lie on the floor or in the recliner most of the day) (Tr. 37-38), were belied by substantial evidence of record (Tr. 18-19).

Plaintiff argues that the ALJ erred by not discussing all of the credibility factors set forth in SSR 96-7p. (Document #14 at 8-10). As an initial matter, the ALJ complied with SSR 96-7p by providing specific reasons for his credibility findings that were supported by the evidence of record. See SSR 96-7p, 1996 WL 374186, at *4. There is no requirement that the ALJ address every credibility factor. See, e.g., Vining v. Astrue, 720 F. Supp. 2d 126, 138 (D. Me. 2010) ("This court

has rejected the notion that an administrative law judge must slavishly discuss all factors relevant to analysis of a claimant's credibility and complaints of pain in order to make a supportable credibility finding."); Ware v. Apfel, No. IP 99-1526-C H/G, 2000 WL 1707942, at *6 (S.D. Ind. Nov. 14, 2000) ("The ALJ need not mechanically recite findings on each [credibility] factor, but must give specific reasons for the weight given to the individual's statements.") (citing SSR 96-7p). The ALJ addressed each of the credibility factors in his decision (Tr. 18-19). With respect to the nature, location, duration, and frequency of Plaintiff's pain, the ALJ recounted Plaintiff's testimony that she suffered from "constant and worsening back pain" that "radiates into her right leg" and results in "numbness in her feet that makes it hard to walk." (Tr. 18, 31, 35-36, 42). The ALJ also discussed the measures that Plaintiff took to relieve her pain, citing her testimony that "lying on the floor makes her back pain better" and that "she has to lie down on a heating pad (for about 20 minutes at a time) ten or more times a day." (Tr. 18, 32, 36-37). Additionally, the ALJ noted Plaintiff's testimony that "she has special shoes that help her ease her pain to some degree," but which were "not recommended by her physician." (Tr. 18, 41). Moreover, as discussed above, the ALJ addressed Plaintiff's use of pain medication (Tr. 19).

The ALJ also noted Plaintiff's alleged functional limitations, citing her testimony that "she can stand for 30-40 minutes" at a time (if allowed to shift or move while standing), that "she can walk about 500 feet," that "she is unable to sit for long periods of time," and that she is unable to "lift anything heavy" (Tr. 18, 32, 34-36). Further, the ALJ noted Plaintiff's allegation that she was unable to raise her hand over her head prior to surgery for a torn rotator cuff. (Tr. 18, 43). The ALJ addressed Plaintiff's alleged limitations in daily activities, citing her testimony that "her husband vacuums, sweeps, mops, and does the laundry" and "has to help her dress on occasion." (Tr. 18, 31-33, 39).

9

The ALJ properly considered Plaintiff's credibility and relied on the objective medical evidence, limited course of her treatment, and her activities of daily living to determine that her subjective complaints were not credible to the extent that they exceeded the ALJ's RFC finding. (Tr. 18-19).

Plaintiff's final assignment of error concerns the ALJ's determination that Plaintiff had the RFC to perform the full range of light work. A claimant's RFC represents the extent of her possible work activity despite her impairment. 20 C.F.R. § 404.1545(a). The claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC. See, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity"). However, the Commissioner alone is responsible for determining the claimant's RFC based on all of the relevant evidence. See Johnson, 434 F.3d at 653; 20 C.F.R. §§ 404.1545, 404.1546.

Plaintiff argues that the activities of daily living relied upon by the ALJ in his RFC finding fail to establish that she could perform substantial gainful activity at the "light" exertional level (Document #14 at 10-12). However, Plaintiff's activities of daily living constitute just one of several factors upon which the ALJ relied in evaluating her RFC. (Tr. 17-20). As discussed above, the ALJ also appropriately based his RFC finding on the objective medical findings, course of treatment, and medical opinion evidence. Importantly, the ALJ relied on the opinions of the two State agency physicians, who reviewed the medical evidence and likewise opined that she could

perform "light" exertional work.[7] See, e.g., Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984); SSR 96-6p, 1996 WL 374180, at *2. In light of these opinions, Plaintiff's argument that the ALJ impermissibly and inaccurately interpreted raw medical evidence is not persuasive. (Document #14 at 12-13). Plaintiff has failed to produce any medical opinion contradicting the opinions of the State agency physicians. Cf. Lemken v. Astrue, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010) (Because "Plaintiff has failed to present evidence that contradicts the ALJ's decision, the Plaintiff's contention that the ALJ's decision should be remanded is unavailing.").

Finally, Plaintiff misstates the standard of review when she asserts that "[s]ubstantial evidence in this case shows that the Plaintiff cannot perform 'light' work as a result of her back problems." (Pl. Mem. 11). Regardless of whether other evidence of record could support a different determination, the Court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). As detailed above, substantial evidence in the form of medical opinions, objective medical findings, treatment regimen, and daily activities supports the ALJ's RFC finding (Tr. 17-20).

The ALJ's decision that Plaintiff retained the Residual Functional Capacity to perform light work is supported by substantial evidence. Plaintiff's assignment of error should be overruled.

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v.

---

[7] Although the State agency physicians limited Plaintiff to "occasional" stooping and crouching, such limitation does not appreciably detract from the "light" occupational base (Tr. 208, 255). See SSR 85-15, 1985 WL 56857, at *7 ("If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. . . This is also true for crouching. . .").

11

Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994) (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and Plaintiff's credibility and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #13) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #18) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from

raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**.

Signed: September 26, 2011

David S. Cayer
United States Magistrate Judge